UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| LESTER HAYNES, JR., | ) |
| Plaintiff, | ) ) ) |
| v. | ) No.  2:24-CV-155-CRW |
| LIEUTENANT DAVIS, CORPORAL KOLONIS, and MARY CONNER, | ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION & ORDER

Plaintiff, proceeding pro se, filed a Complaint [Doc. 1] against Defendants in this matter alleging violations of 42 U.S.C. § 1983. More specifically, Plaintiff asserted claims against Defendants alleging excessive force arising out of an incident in which Defendant Conner shot Plaintiff with nine PepperBalls during his confinement in the Sullivan County Jail. [Doc. 61; Doc. 67-5 p. 35]. Plaintiff has now filed a motion to answer Defendants' answer to his complaint [Doc. 64] and Defendants have filed a motion for summary judgment [Doc. 67], both of which are now ripe for resolution.

**I.    MOTION TO ANSWER**

The Court will turn first to Plaintiff's motion to answer Defendants' answer to his complaint [Doc. 64].  In that motion, Plaintiff includes unsworn factual allegations responsive to various assertions included in Defendants' answer.  Defendants did not respond to this motion, and their time for doing so has passed.  E.D. Tenn. L.R. 7.1(a).

Rule 7(a) of the Federal Rules of Civil Procedure governs the pleadings that are permitted to be filed in a federal action, and they are as follows:

>  (1) a complaint;
>  (2) an answer to a complaint;
>  (3) an answer to a counterclaim designated as a counterclaim;
>  (4) an answer to a crossclaim;
>  (5) a third-party complaint;
>  (6) an answer to a third-party complaint; and
>  (7) if the court orders one, a reply to an answer.

Fed. R. Civ. P. 7(a).

In this case, Defendants' answer does not include any counter or crossclaims against Plaintiff [Doc. 60], and the Court did not order Plaintiff to file a reply to Defendants' answer. As such, pursuant to Rule 7(a), Plaintiff's motion to answer Defendants' answer to his complaint [Doc. 64] is **DENIED**.

## II.     SUMMARY JUDGMENT

The Court now turns to Defendants' motion for summary judgment [Doc. 67]. In support of this motion, Defendants filed a memorandum [Doc. 67-1] and exhibits [Doc. 67-2–8]. Plaintiff filed two unsworn responses in opposition to this motion [Docs. 70, 71].

### A.     Standard

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party and makes all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). To successfully oppose a motion for summary judgment, "the non-moving party . . . must present

2

Case 2:24-cv-00155-CRW     Document 72     Filed 11/26/25     Page 2 of 12     PageID #: 442

sufficient evidence from which a jury could reasonably find for him." *Jones v. Muskegon Cnty.*, 625 F.3d 935, 940 (6th Cir. 2010).

B. **Plaintiff's Evidence**

In the sworn portion of his amended complaint [Doc. 61 p. 7–11], Plaintiff alleges that on August 2, 2024, while he was incarcerated in the Sullivan County Jail, a fight occurred in his cell. [Doc. 61 p. 9–10].[1] Defendants Davis and Kolonis responded to the fight, and after the inmates involved in the fight refused to leave the cell, Defendants Davis and Kolonis left and said they would be back. [*Id.* at 10]. Subsequently, while Plaintiff was sitting on his bed with earplugs in, he heard a loud gunshot, at which point he stood up, looked at the officers coming into the cell who were yelling, and then looked at the inmates who were also yelling. [*Id.*]. Plaintiff was then shot nine times with PepperBalls, with five shots hitting his back and three shots hitting his arm, and he states that Defendants Davis and Kolonis "ordered the attack."[2] [*Id.*].

The portion of Plaintiff's complaint [Doc. 61 p. 1–6] not referenced above and his responses to Defendants' motion for summary judgment [Docs. 70, 71] are not sworn to nor are they provided under penalty of perjury. Because statements made in pleadings filed with the court or responses to discovery requests must either be sworn to or provided under penalty of perjury before they can be considered competent proof, the Court cannot consider them for purposes of summary judgment. Fed. R. Civ. P. 56(c)(4); *Dole v. Elliot Travel & Tours, Inc.*, 942 F.2d 962, 968–69 (6th Cir. 1991) (providing that a court may not consider unsworn statements when ruling on a motion for summary judgment); *Farr v. Centurion of Tennessee, LLC*, No. 21-5094, 2022

---

[1] The Court is treating the sworn portion of Plaintiff's amended complaint as an affidavit. See *El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008) (holding that a sworn complaint carries the same weight as an affidavit for purposes of summary judgment).
[2] Plaintiff provides the location for where only eight of the nine shots hit him. [*Id.*].

WL 18457630, at *1 (6th Cir. Aug. 1, 2022) (noting that the "district court . . . properly declined to consider as evidence the allegations in [the plaintiff's] complaint and the arguments in his responses to the motions for summary judgment . . . because his complaint was not verified and his responses were not sworn or submitted under penalty of perjury").

### C. Defendants' Evidence

In support of their motion for summary judgment, Defendants filed, among other things, their own sworn affidavits indicating in relevant part that in the incident underlying Plaintiff's complaint all three Defendants and other officers "went to the cell to forcibly remove the inmates who had been fighting" [Doc. 67-6 p. 2; Doc. 67-7 p. 2; Doc. 67-8 p. 2]. When the officers arrived at the cell, Defendant Davis fired a "Bore Thunder," which is "a flash-bang device" [*Id.*]. Defendants further testify that even though "[a]ll inmates are instructed during their incarceration in the Sullivan County Jail to get on the ground any time a Bore Thunder is fired" and "[a]ll officers instructed the inmates to get on the ground numerous times," many inmates, including Plaintiff, did not get on the ground despite the firing of the Bore Thunder and the officers' instructions. [*Id.*].

Defendant Conner additionally testifies in her affidavit that "Plaintiff was in the front part of the cell looking in the direction of officers and at times looking directly at [her][] [but] making no effort to get on the ground," even after Defendant Conner and others "continued to instruct" them to do so, and that "[she] felt he was the closest threat" [Doc. 67-8 p. 2]. She further advises that another officer fired PepperBalls into the center of the cell but many inmates, including Plaintiff, still did not get on the ground, and given Plaintiff's conduct she then "fired three rounds striking Plaintiff." [*Id.*]. Still, according to Defendant Conner, this action did not result in Plaintiff getting on the ground, so she fired "two or three more rounds," at which point Plaintiff got on the ground. [*Id.*].

4

All three Defendants testify that they were trained to use PepperBalls to control a cell, and when an officer fires them into the center of the cell "without impacting inmates . . . to saturate the jail cell," meaning that another officer is to fire additional PepperBalls until the inmates have been impacted as necessary. [Doc. 67-6 p. 2; Doc. 67-7 p. 2; Doc. 67-8 p. 2]. Defendants further testify that "PepperBalls are a non-lethal method of crowd control … to restore order," and they contain "a powder form of pepper spray" that is released when the PepperBalls "hit their target." [Doc. 67-6 p. 2; Doc. 67-7 p. 2; Doc. 67-8 p. 3]. This pepper spray powder "causes temporary discomfort, pain, coughing, sneezing, and irritation of the eyes, nose, and throat." [*Id.*]. According to Defendants, it is normal for PepperBalls to cause the type of injuries Plaintiff experienced, and each Defendant was shot with PepperBalls during their training and experienced injuries similar to those Plaintiff experienced. [Doc. 67-6 p. 3; Doc. 67-7 p. 3; Doc. 67-8 p. 3]. Defendant Kolonis attached two pictures of the wounds Plaintiff sustained to his affidavit. [Doc 67-7 p. 40].

Defendants also filed portions of Plaintiff's deposition in support of their motion for summary judgment [Doc. 12]. In his deposition, which he gave while incarcerated at the Sullivan County Jail, Plaintiff testified that he had been held in that facility for approximately fifteen months before the incident underlying his complaint [Doc. 67-5 p. 6, 8], that he was waiting to be released on probation at the time of the deposition [*Id.* at 9], and that he had been previously held in the Sullivan County Jail for about six times total for approximately 980 days. [*Id.* at 10, 11]. Plaintiff further stated that during the incident underlying his complaint, he was sitting on his bed wearing earplugs when officers initially responded to a fight between two inmates on the other side of the bars from him, and when the inmates involved in the fight refused to leave the cell, the officers said they would come back [*Id.* at 14–15, 16, 19, 21–22].

5

Plaintiff then heard a loud bang that he describes as a shotgun bang, at which point he stood up. [*Id.* at 18]. After Plaintiff stood up, he first looked at the officers who were "yelling [and] scream[ing]" before looking back at the inmates, at which point he was "shot nine times." [*Id.* at 18–19, 27]. According to Plaintiff, three officers initially came into the cell, but a total of ten officers were ultimately in the cell. [*Id.* at 26–27].

Plaintiff also states that the shotgun bang sound that he heard, which he acknowledged was a Bore Thunder, means "[t]hey're coming in to search, they're coming in to get somebody, they're coming in to do something" [*Id.* at 25–26, 28]. Still, Plaintiff denied hearing any officer tell him to get on the floor because he was wearing earplugs but did confirm that knew the officers were yelling. [*Id.* at 29–30]. Plaintiff further acknowledged that the sound of the Bore Thunder and officers coming into a cell are indications that the inmates should get on the floor and that he could have laid on his bed. [*Id.* at 31–32]. He also stated that this was not his first experience of this kind, having previously witnessed an incident in the same cell where officers came in to get inmates out and the inmates "started swinging on" the officers, and that the gate to his cell was open at the time he was shot. [*Id.* at 32-34]. In contradiction to what Defendant Conner stated, Plaintiff asserts Defendant that no other officer had shot any PepperBalls into the cell before Officer Conner shot him. [*Id.* at 35]. Plaintiff advised that after being shot with these PepperBalls, he could not see for hours, was left with permanent scars, nightmares, and a severe nervous condition. *Id*; [Doc. 61, p.2].

Defendants filed copies of their interrogatory responses in further support of their motion for summary judgment, and those responses are verified under oath. [Doc. 67-2–4]. As such, the Court will also consider them for purposes of summary judgment, where it could not consider

6

certain unsworn filings made by Plaintiff, as referenced above. Fed. R. Civ. P. 56(c)(4); *Dole*, 942 F.2d at 968–69; *Farr*, 2022 WL 18457630 at *1.

D. **Analysis**

Plaintiff asks the Court to find that Defendant Conner used excessive force against Plaintiff by shooting him with PepperBalls. He seeks to hold Defendants Kolonis and Davis liable as well because he asserts that Defendant Conner was acting on their orders. On the other hand, Defendants claim that they are not liable to Plaintiff because they did not violate his constitutional rights and are entitled to qualified immunity.

Neither Plaintiff nor Defendants directly address in their filings whether Plaintiff was a pretrial detainee or a convicted prisoner at the time of the incident underlying the complaint. However, given his deposition testimony that he was awaiting release to probation when he gave his deposition, it appears highly likely that Plaintiff was a convicted prisoner. Still, in giving Plaintiff the benefit of the doubt, the Court will evaluate Plaintiff's excessive force claims under the greater protections afforded by the Fourteenth Amendment, rather than those provided by the Eighth Amendment. *Coleman v. Hamilton Cnty. Bd. of Cnty. Commissioners*, 130 F.4th 593, 599 (6th Cir. 2025) ("Corrections officers must protect convicted prisoners from harm under the Eighth Amendment, and they must protect pretrial detainees from harm under the Due Process Clause.") (citation omitted); *Love v. Franklin Cnty.*, 376 F. Supp. 3d 740, 745 (E.D. Ky. 2019) (finding "the Fourteenth Amendment affords pretrial detainees greater protections than those afforded to convicted prisoners by the Eighth Amendment.") (citations omitted).

For a reasonable jury to find that the force used against Plaintiff violated the Fourteenth Amendment, the record must contain evidence "that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015). "The

reasonableness of the force turns on the facts and circumstances of the particular case, and '[a] court must make this determination from the perspective of a reasonable [official] on the scene, including what the [official] knew at the time, not with the 20/20 vision of hindsight.'" *Howell v. NaphCare, Inc.*, 67 F.4th 302, 320 (6th Cir. 2023) (citing *Kingsley*, 576 U.S. at 397). Factors that "bear on the reasonableness or unreasonableness of the force used," *Kingsley*, 576 U.S. at 397, include the following:

> [T]the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Howell*, 67 F.4th at 320 (quoting *Kingsley*, 576 U.S. at 397).

Also, qualified immunity protects government officials from individual liability for conduct that does not violate clearly established constitutional rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001) (quotation omitted).

Once a defendant raises qualified immunity, the plaintiff has the burden of showing it does not apply. *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006). To meet this burden, the plaintiff "must point to a case showing that reasonable officers would have known their actions were unconstitutional under the specific circumstances they encountered." *Bell v. City of Southfield*, 37 F.4th 362, 367 (6th Cir. 2022) (citation omitted). Such citations "are especially important" in excessive force cases. *Id.* (citations omitted).

The Court finds the case of *Cretacci v. Call*, 988 F.3d 860 (6th Cir. 2021) instructive in considering the merits of Defendants' motion for summary judgment. In *Cretacci*, after a

corrections officer overheard an inmate threaten to stab another inmate, an officer made an announcement over a loudspeaker telling the inmates to lay on the ground. *Id.* at 863, 864. The *Cretacci* plaintiff claimed he did not hear that loudspeaker announcement, but another officer heard it, and a different officer repeated the same instruction when he entered the room where the plaintiff was located. *Id.* While the plaintiff heard that second instruction, he still did not get on the ground. *Id.* Accordingly, an officer fired an unspecified number of PepperBalls at the plaintiff, and one or two of those PepperBalls hit the plaintiff in the arm. *Id.* The plaintiff then stood and yelled at the officers, at which point the officer again fired PepperBalls at the plaintiff, this time hitting him once in the back, at which point the plaintiff laid down on the ground. *Id.*

In affirming the district court's decision granting summary judgment to the officer who fired PepperBalls on the *Cretacci* plaintiff, the Sixth Circuit first noted that, based on the stabbing threat present in *Cretacci*, the officer who fired PepperBalls at the plaintiff "had a legitimate interest in maintaining order to prevent violence and protect the inmates" and "used a non-lethal weapon" that only caused the plaintiff bruises for a few days. *Id.* at 869. The Court also noted that the undisputed evidence demonstrated that officers made announcements for the inmates to lie down. *Id.* Additionally, as to the plaintiff's claim that the firing of the second round of PepperBalls at him violated his constitutional rights, the Sixth Circuit noted that "[the plaintiff] was not in the process of complying with [the officer's] order when he was hit with a PepperBall the second time; he was beginning to stand up and yell" which amounted to "active resistance . . . [that] can take the form of 'verbal hostility' or 'a deliberate act of defiance.'" *Id.* at 869–70.

In a manner that is similar to *Cretacci*, the undisputed proof in this case demonstrates that (1) Defendant Conner had a legitimate interest in using force to maintain order and protect the officers and inmates in the cell, and (2) Defendant Conner also used the same non-lethal weapon,

9

namely a PepperBall gun, to gain Plaintiff's compliance with officers' orders. Specifically, as set forth above, the record contains undisputed proof that (1) officers were present due to a fight that had occurred between two inmates, which they had initially tried to address unsuccessfully; (2) Plaintiff acknowledged that he heard officers say that they would return, despite having his earplugs in at the time; 3) Plaintiff's cell door was open when he and other inmates failed to comply with the officers' repeated instructions for them to get on the ground; and (4) Defendant Conner used the pepper gun against Plaintiff because he was at the front of the cell and she viewed him as a threat. Further, before Defendant Conner initially shot at him, Plaintiff acknowledges that he had gone from a seated to a standing position, making it all the more understandable that Defendant Conner viewed him as a threat. While the parties dispute whether any other officer had fired PepperBalls into the cell before Defendant Conner fired at Plaintiff, and disagree as to the number of PepperBalls Defendant Conner fired at him, even accepting as true Plaintiff's testimony that Defendant Conner fired first and did in fact fire nine PepperBalls that hit him, the undisputed evidence still indicates that like the officer in *Cretacci*, Defendant Conner only fired PepperBalls at Plaintiff until he complied with the officers' instruction to get on the ground.

The Court further notes that, like in *Cretacci*, the undisputed evidence in the record demonstrates that Plaintiff knew he was supposed to get on the ground prior to Defendant Conner firing PepperBalls at him. Plaintiff acknowledged that he heard the Bore Thunder fire and that it indicated to him that he and other inmates should get on the ground. Additionally, Defendants' affidavits establish that all inmates in the Sullivan County Jail are instructed that the firing of the Bore Thunder means that they are to get on the ground. The record also contains undisputed proof that officers repeatedly instructed the inmates to get on the ground after the Bore Thunder was fired and before firing PepperBalls, and that Plaintiff saw and heard the officers "yelling [and]

10

scream[ing]" at inmates before he was shot. However, instead of laying on his bunk or the ground after hearing the Bore Thunder and observing the officers yelling and screaming, Plaintiff stood up and remained standing until he was hit with nine PepperBalls. And while Plaintiff did not yell at the officers like the plaintiff in *Cretacci*, Plaintiff has not come forward with evidence indicating that any Defendant knew or should have known that he had not heard their instructions to get on the floor and was not acting in defiance. Moreover, it is difficult to understand how Plaintiff could have heard the officers loudly state when they initially left the cell that they would return, but then when they did return, could not hear what they were yelling and screaming.

While the threat of an inmate stabbing in *Cretacci* is arguably more of an emergent security threat than the fighting inmates' refusal to leave the cell which gave rise to Plaintiff being shot in this case, the Court finds that the difference is not outcome determinative. Defendants' affidavits demonstrate that Plaintiff and an unspecified number of other inmates failed to get on the ground despite the firing of the Bore Thunder and the officers' repeated instructions. Plaintiff's deposition testimony establishes that the gates of the cell were open when officers were present at the time he failed to comply with officers' instructions and was shot. Further, the undisputed testimony demonstrates that officers were not successful when they initially attempted to get the situation under control after learning that two inmates were fighting.

Finally, in response to Defendants' motion for summary judgment raising the defense of qualified immunity, Plaintiff has not cited to any binding case law establishing that a reasonable officer in Defendants' positions should have known that his or her actions in the incident underlying Plaintiff's complaint would violate Plaintiff's constitutional rights. As set forth above, Plaintiff does have the burden of citing to this authority. *Bell*, 37 F.4th at 367. This omission by

Plaintiff is especially notable given the substantial similarities between this case and *Cretacci* highlighted above.[3]

The Supreme Court has found that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Because (1) Plaintiff has not set forth proof from which a reasonable jury could find that any Defendant violated his constitutional rights in the incident underlying his complaint and (2) Plaintiff failed to cite any applicable case law establishing that reasonable officers in Defendants' positions would have known that their actions were unconstitutional under the specific circumstances of this case, the Court must find that Defendants are entitled to qualified immunity in this action, meaning that their Motion for Summary Judgment should be granted.

### III. CONCLUSION

For the reasons set forth above, (1) Plaintiff's motion to answer Defendants' answer to his complaint [Doc. 64] is **DENIED**; Defendants' motion for summary judgment [Doc. 67] is **GRANTED**; and this action is **DISMISSED**. The Court hereby **CERTIFIES** that any appeal from this order would not be taken in good faith. As such, should Plaintiff file a notice of appeal, this Court will **DENY** Plaintiff leave to appeal *in forma pauperis*. *See* 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24.

**SO ORDERED:**

/s/Cynthia Richardson Wyrick
United States Magistrate Judge

---

[3] Moreover, the Court is not aware of any case that exists which stands for that proposition.